# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE WAYNE BAKER,<br><br>    Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:24-cv-00277-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Kyle Wayne Baker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   FACTUAL BACKGROUND

On December 11, 2020, Plaintiff protectively filed claims for DIB and SSI payments, alleging he became disabled on November 12, 2020, due to epilepsy with grand mall [sic] seizures, high blood pressure, and anxiety. (Administrative Record ("AR") 17, 65, 66, 85, 86, 107, 108, 109, 131, 132, 133, 157, 302.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

Plaintiff was born on August 9, 1996, and was 24 years old on the alleged disability onset date. (AR 31, 65, 85, 107, 131, 309, 351, 362.) He has at least a high school education and can communicate in English. (AR 31, 45, 303.) Plaintiff has previously worked as an in-home care provider and as a farm worker. (AR 30, 58, 303, 312.)

**A.     Relevant Evidence of Record[2]**

      **1.     Medical Evidence**

In April 2020, Plaintiff was admitted to the hospital due to an "intractable seizure." (AR 402.) He reported that he had not been compliant with his medications and decreased his seizure medications. (AR 402, 419.) That same month, Plaintiff's recurrent seizures were "related to medication non-compliance." (AR 409.)

Plaintiff was hospitalized for "uncontrolled seizures" in November 2020. (AR 535–38.) It was reported that he had a 10-minute seizure in the ambulance. (AR 535.) Prior to that, he had been seizure free for about three months. (AR 535.) On examination, Plaintiff was in no acute distress, had clear lungs to auscultation, had regular cardiovascular rate and rhythm, had normal range of motion, was cooperative, had appropriate mood and affect, had normal judgment, had normal sensory observed, had normal coordination observed, had normal speech observed, and had normal strength. (AR 544–45.) A CT of the brain revealed no evidence for acute intracranial hemorrhage, and stable, small, right, frontal lobe mass with calcifications was noted. (AR 546–47, 549.) The hospital record indicated that Plaintiff was found to have recurrent seizures with frequent use of Ativan, and it was recommended to start him on a different medication. (AR 556.) The hospital record also indicated that Plaintiff had no seizures in the last 24 hours and was stable, so he was discharged on current medications and was to see a neurosurgeon "as soon as possible to remove [a] cavernoma." (AR 556.)

In December 2020, Plaintiff presented for a medical refill appointment. (AR 641.) He reported that he "started missing doses of his seizure medication, which gives rise to uncontrollable seizures." (AR 641.) He denied any more seizure activities since he was discharged from the

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

hospital the prior month. (AR 641.) On examination, Plaintiff was cooperative, with a grossly intact motor and sensory examination and normal affect. (AR 641.)

Plaintiff presented for a psychological evaluation with consultative examiner Roger A. Izzi, Ph.D., in March 2021. (AR 671–75.) On examination, Plaintiff was alert, had no obvious speech or language problems detected, no gross indications of psychosis or schizophrenia, no observed auditory and visual hallucinations, and no apparent loss of contact with reality. (AR 672.) His mood seemed dysphoric, he seemed irritated at times, responded "depressed" when asked how he was feeling emotionally, and received a Full-Scale IQ score of 61 on the WAIS-IV, which suggested that Plaintiff's present level of intellectual functioning is within the Extremely Low Range. (AR 672–73.) Testing also indicated Plaintiff had deficits in memory functions. (AR 674.) He was assessed with unspecified mild neurocognitive disorder and persistent depressive disorder with anxious distress. (AR 674.)

Plaintiff presented for another medication refill appointment in May 2021. (AR 719.) He reported that he had been without seizures for six months. (AR 719–20.) His physical examination was normal, and he was "alert and oriented x3," cooperative, and was in no acute distress. (AR 719–20.) In November 2021, Plaintiff denied having seizures since his last visit to Vladimir Royter, M.D. (AR 805.)

During a medication refill appointment in October 2022, Plaintiff indicated he was being followed by neurology but needed to make an appointment for a follow up since November 2021. (AR 836.) He reported having had one seizure in June and no episodes since. (AR 836.) He denied any acute medical concerns. (AR 836.) In December 2022, Plaintiff denied headache, shortness of breath, cough, chest pain, and abdominal discomfort. (AR 833.) On examination with Dr. Royter, Plaintiff was in no acute distress, "alert and oriented x3," cooperative, had a grossly intact motor and sensory examination, responded appropriately, and was interactive with normal affect. (AR 834.) He was assessed with a seizure disorder. (AR 833.) Later that same month, Plaintiff reported twice-a-week episodes of unresponsiveness, lips smacking, falls, and blackouts to Dr. Royter. (AR 802.) Symptomatic, localization-related epilepsy due to right frontal lobe cavernoma was noted, which was "progressing as expected" on multiple medications. (AR 802–803, 806.) He was noted

to be alert and oriented, in no acute distress, cooperative, and with appropriate mood and affect. (AR 806.)

### 2.  Opinion Evidence

Following his consultative examination in March 2021, Dr. Izzi opined that there is likely to be a moderate impairment in Plaintiff's ability to perform a simple and repetitive type task on a consistent basis over an eight-hour period; that his ability to get along with peers or be supervised in work-like setting would be moderately limited by his mood disorder; that he has cognitive and emotional factors that may combine and may limit his ability to perform a complex task on a consistent basis over an eight-hour period; and that on a purely psychological basis, there is likely to be moderate impairments of responding to usual work session situations regarding attendance and safety issues and dealing with changes in a routine work setting. (AR 674.)  Dr. Izzi also opined that Plaintiff does not appear capable of managing his own funds. (AR 675.)

Dr. Royter completed a "Seizure Medical Source Statement" form and a "Physical Medical Source Statement" form in August 2022. (AR 756–63.)  Dr. Royter indicated that he has treated Plaintiff over a five-year period, about two to three times per year. (AR 756, 760.)  The opinions reflect diagnoses of stomach pain and convulsive (grand mal or psychomotor) seizures and indicate that the frequency of Plaintiff's seizures was "1-2/year." (AR 756, 760.) Dr. Royter opined that Plaintiff can sit, stand/walk less than two hours total in an eight-hour working day (with normal breaks); he can occasionally lift and carry less than 10 pounds; he can rarely lift and carry 10 pounds in a competitive work situation; he can never lift and carry 20 pounds in a competitive work situation; he can rarely twist; he can never stoop (bend), crouch/squat, climb stairs, or climb ladders; and he is likely to be "off-task" 25% or more of a typical workday. (AR 758, 760–62.)  According to Dr. Royter, Plaintiff is incapable of even "low stress" work, is likely to be absent from work because of impairments or treatment more than four days per month and will need to take unscheduled breaks every 30 minutes for 10 minutes on average during a working day. (AR 757, 759, 762–63.)

### 3.  Plaintiff's Statement

Plaintiff directed the completion of an "Adult Function Report" in February 2021. (AR 336–43.) He indicated that he has "unpredictable seizures" that "happen almost every day." (AR 336.)

4

1  According to Plaintiff, his conditions affect his sleep, talking, memory, completing tasks,
2  concentration, understanding, following instructions, and use of his hands. (AR 341.) He indicated
3  he has no problem with personal care, such as dressing, bathing, and feeding himself. (AR 337.)
4  Plaintiff prepares his own meals using the microwave, vacuums with reminders, watches television,
5  spends time with others in person, can count change and handle a saving account, plays cards and
6  dominoes, and does not have any problems getting along with others. (AR 338, 339, 340.)

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on May 10, 2021, and again on reconsideration on October 8, 2021. (AR 17, 157–61, 170–76.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 177–209.) At the hearing on February 9, 2023, Plaintiff appeared with counsel by phone and testified before an ALJ as to his alleged disabling conditions. (AR 38–47.)

**1.  Plaintiff's Testimony**

Plaintiff testified that he has experienced seizures at least twice a week for the past five years, which are predominately triggered by stress. (AR 47–49, 54–55.) He indicated that during a seizure, he experiences tingling sensations, drooling, and loss of consciousness, which last about 15 minutes. (AR 53.) He also testified that he experiences nausea, vomiting, memory issues, sleepiness, dizziness, stomach issues, and pain. (AR 48, 50, 54, 55, 57.)

**2.  Vocational Expert's Testimony**

A Vocational Expert ("VE") also testified at the hearing. (AR 58–63.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 59.) The VE was also to assume this person could perform light work, specifically, the person can lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, stand and/walk for about six hours, and sit for up to six hours in an eight-hour workday with normal breaks. (AR 59.) They can never climb ropes or scaffolds, can occasionally climb ramps or stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. (AR 59.) The individual can never be exposed to unprotected high places or unguarded moving mechanical parts, and they can have no operation of a motor vehicle. (AR 59.) They can tolerate a moderate noise intensity level, can understand, remember, and carry out simple

instructions and make simple work-related decisions. (AR 59.) They can tolerate occasional interactions with public, coworkers, and supervisors, and can work at a consistent pace in goal-oriented work throughout the workday but cannot perform work requiring a strict production rate. (AR 59.) Finally, they can perform work with only occasional changes in the routine work setting. (AR 60.) The VE testified that such a person could not perform Plaintiff's past work as a farm worker (AR 58), but he perform other light jobs in the national economy such as bagger, Dictionary of Operational Titles (DOT) code 920.687 018, with a specific vocational preparation (SVP)[3] of 1; marker, DOT code 209.587-034, with a SVP of 2; and sorter, DOT code 361.687 014, with a SVP of 2. (AR 60.) The VE further testified that being absent one to two times per month on a consistent basis or being off task more than 10% of the workday would preclude all work. (AR 60–61.)

**C.   The ALJ's Decision**

In a decision dated April 14, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–32.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 19–32.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2021, and he had not engaged in substantial gainful activity since November 12, 2020, the alleged onset date (step one). (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe: epilepsy; obesity; unspecified mild neurocognitive disorder; and persistent depressive disorder with anxious distress. (AR 19–20.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20–23.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and

assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally lift up to 20 pounds; can frequently lift/carry up to 10 pounds; can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday with normal breaks. He can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs. He can occasionally kneel, crouch, and crawl. He can never be exposed to unprotected high places or unguarded moving mechanical parts and cannot operate a motor vehicle. He can tolerate a moderate noise intensity level as defined in the Selected Characteristics of Occupations. He can understand, remember, and carry out simple instructions; can make simple work-related decisions; can tolerate occasional interactions with the public, co-workers, and supervisors; and can work at a consistent pace in goal-oriented work throughout the workday but cannot perform work requiring a strict production rate (e.g., such as assembly-line work that the worker cannot control) or work that requires hourly quotas. [Plaintiff] can perform work with only occasional changes in a routine work setting.

(AR 23–30.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.)

The ALJ determined that Plaintiff could not perform his past relevant work (step four) but given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 30–32.) The ALJ concluded Plaintiff was not disabled from November 12, 2020, through the date of the decision. (AR 32.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 8, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

7

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

"However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*,

533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in their assessment of the medical opinions of Drs. Izzi and Royter, and further failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Doc. 12; Doc. 17.) The Commissioner responds that the ALJ's consideration of the medical opinions was proper and supported by substantial evidence ant that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 16.) The Court agrees with the Commissioner.

**A.   The ALJ's Treatment of Dr. Izzi's and Dr. Royter's Opinions Was Not Erroneous**

Plaintiff's claims for DIB and SSI are governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 20 C.F.R. § 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 20 C.F.R. § 404.1520c(a)–(b); 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

10

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the consideration of the medical opinion evidence.

11

**1.     Dr. Izzi**

In considering Dr. Izzi's opinion related to Plaintiff's mental functioning, the ALJ determined as follows:

> The undersigned finds this opinion partially persuasive. A March 22, 2021 psychological consultative examination report contained diagnostic impressions of unspecified mild neurocognitive disorder and persistent depressive disorder with anxious distress. The March 22, 2021 psychological consultative examination report also indicated that on exam, [Plaintiff's] mood seemed dysphoric, [Plaintiff] seemed irritated at times, responded "depressed" when asked how he was feeling emotionally, and received a Full Scale IQ score of 61 on the WAIS-IV (the record indicated that test results suggested that [Plaintiff's] present level of intellectual is within the Extremely Low Range, according to test scoring criteria) (in addition, the record indicated that test results suggested deficits in memory functions). However, a December 16, 2022 record indicated that on exam, [Plaintiff] was alert and oriented, was in no acute distress, was cooperative, and had appropriate mood and affect. Also, a December 7, 2022 record indicated that on exam, [Plaintiff] was in no acute distress, was alert and oriented x3, was cooperative, was interactive with normal affect, and responded appropriately. This evidence is consistent with a finding that [Plaintiff] retained the functional abilities in the above residual functional capacity, and the undersigned accounted for the combination of the claimant's impairments and symptoms, such as mood swings, seizures, anxiety, irritability, and cognitive issues, with the limitations in the above residual functional capacity, which include nonexertional mental limitations. Also, a Function Report indicated that [Plaintiff] is able to handle a savings account, which is not consistent with the opinion that [Plaintiff] does not appear capable of managing his own funds.

(AR 29 (internal citations omitted).) The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Izzi's "partially persuasive" opinion. The ALJ cited Dr. Izzi's examination findings of unspecified mild neurocognitive disorder, persistent depressive disorder with anxious distress, irritable mood, and memory deficits, which supported his opinion that there are impairments in Plaintiff's ability to get along with peers or be supervised in work-like setting, to perform a complex task on a consistent basis over an eight-hour period, to respond to usual work session situations regarding attendance and safety issues, and to deal with changes in a routine work setting. (AR 674.) The ALJ incorporated limitations directed to these very impairments into Plaintiff's RFC. (*See* AR 24.)

As to the remainder of Dr. Izzi's opinion that was not accounted for in the RFC (*i.e*., that Plaintiff has a moderate impairment in his ability to perform a simple and repetitive type task on a consistent basis and cannot manage his own funds), the ALJ identified evidence in the record that

12

was inconsistent, such as examinations results by Dr. Royter in December 2022 showing Plaintiff was alert and oriented, was cooperative, had appropriate mood and affect, was interactive with normal affect, and responded appropriately (AR 29 (citing AR 806, 834)). *See Woods*, 32 F.4th at 793 (holding an ALJ may properly rely on inconsistencies with another doctor's observations to discount a medical opinion). The ALJ also pointed to Plaintiff's self-report that he can count change and handle a saving account as inconsistent with a lack of ability to manage funds. (*See* AR 29.)

Plaintiff contends that the ALJ "failed to build a logical bridge between the evidence and his conclusion regarding Plaintiff's functional limitations." [5] (Doc. 12 at 10.) However, the ALJ's rationale is sufficiently clear, and while the ALJ recognized Plaintiff may suffer from mental limitations—as evidenced by the RFC—it is at least reasonable for the ALJ to have determined that a significant restriction on Plaintiff's mental abilities was at odds with both Dr. Royter's normal examination findings and Plaintiff's self-reports. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld"); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Accordingly, the Court finds substantial evidence supports the ALJ's partial rejection of Dr. Izzi's opinion.

**2.     Dr. Royter**

The ALJ deemed Dr. Royter's opinions not persuasive, finding that they were "internally inconsistent" as well as "inconsistent with the record as a whole." (AR 28.) They explained:

> The evidence of 1-2 seizures per year is generally consistent with the evidence of record up until the late 2022 time period. For instance, a May 26, 2021 record

---

[5] Plaintiff also criticizes the ALJ for not specifically mentioning the "supportability" factor. (*See* Doc. 12 at 8–9; Doc. 17 at 1.) Properly evaluating medical opinion evidence, however, "does not hinge on whether the ALJ used the magic words 'consistency' and 'supportability,' but whether the ALJ actually analyzed those factors in evaluating the state agency medical consultants' opinions." *Ashley A. V. v. Kijakazi*, Case No. 1:22-cv-00288-REP, 2023 WL 3604460, at *4 (D. Idaho May 22, 2023)); *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *1 (9th Cir. June 21, 2023) (stating that "[a]n ALJ is not required to incant the 'magic words' of 'supportability' and 'consistency' in his findings" (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)); *Ramirez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-02163-PHX-JAT, 2022 WL 3443677, at *7-8 (D. Ariz. Aug. 17, 2022) (finding an ALJ's evaluation of medical opinion evidence proper, even though the ALJ did "not . . . expressly use[ ] words like 'supportability' or 'support'."). Even were the ALJ required to discuss the supportability factor in some detail, the Court finds this error was harmless, as there is substantial evidence supporting the ALJ's evaluation of both it and the consistency factor. *Woods*, 32 F. 4th at 792.

> indicated that the claimant was without a seizure for 6 months. However, the frequency of seizures (1 to 2 per year) over the majority of the relevant time period does not support the opinion that [Plaintiff] will be off-task 25% or more of a typical workday and does not support the opinion that [Plaintiff] is likely to be absent from work as a result of impairments or treatment more than four days per month. Also, a November 2020 record indicated that on exam, [Plaintiff] was in no acute distress, had clear lungs to auscultation, had regular cardiovascular rate and rhythm, had normal range of motion of the back, had a nontender back, had normal range of motion, was cooperative, had appropriate mood and affect, had normal judgment, had normal sensory observed, had normal coordination observed, had normal speech observed, and had normal strength. In addition, a December 7, 2022 record indicated that [Plaintiff] denied headache, shortness of breath, and abdominal discomfort and indicated that on exam, the claimant was in no acute distress, was alert and oriented x3, was cooperative, had a non-tender abdomen, had a grossly intact motor and sensory examination, responded appropriately, and was interactive with normal affect. The evidence that the claimant was alert, was in no acute distress, was cooperative, and responded appropriately is not consistent with the opinion that the claimant will be off-task 25% or more of a typical workday and is not consistent with the opinion that [Plaintiff] is likely to be absent from work as a result of impairments or treatment more than four days per month.

(AR 24.)

The ALJ's evaluation of Dr. Royter's opinions was also free of error. As to supportability, the ALJ reasonably found the opinions internally inconsistent because the finding regarding the frequency of Plaintiff's seizures, *i.e.*, "1-2/year" (AR 756, 760), conflicted with Dr. Royter's opinions that Plaintiff (1) will be off-task 25% or more of a typical workday, and (2) is likely to be absent from work more than four days per month (AR 757–63). (AR 28.) Internal inconsistency in a physician's opinion is a specific and legitimate reason to find an opinion less persuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion); *see also Ocejo v. Astrue,* No. 1:10-CV-01604 GSA, 2011 WL 5554358, at *11 (E.D. Cal. Nov. 15, 2011) ("Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion.").

Plaintiff contends that the ALJ's conclusion rests on a "contrived inconsistency" because Dr. Royter's opined "need for unscheduled breaks" is caused by Plaintiff's stomach aches and fatigue, not seizures. (Doc. 12 at 12.) This argument is a red herring, however, because the inconsistency identified by the ALJ in Dr. Royter's opinions concerns Plaintiff's alleged inability to stay on task and attend work on a regular basis, not his alleged need for breaks. (*See* AR 28.) It is the former's—

not the latter's—inconsistency with a finding of infrequent seizures that forms the basis for the ALJ's supportability conclusion.

Regarding the consistency factor, the ALJ found these same opined limitations also inconsistent with the other medical evidence, including treatment notes and physical examinations in the record. As cited by the ALJ, Plaintiff's examination in November 2020 showed he was in no acute distress, had clear lungs to auscultation, had regular cardiovascular rate and rhythm, had normal range of motion, was cooperative, had appropriate mood and affect, had normal judgment, had normal sensory observed, had normal coordination observed, had normal speech observed, and had normal strength. (AR 544–45.) In December 2022, Plaintiff denied headache, shortness of breath, cough, chest pain, and abdominal discomfort to Dr. Royter himself. (AR 833.) Dr. Royter's examination findings during that visit were similarly unremarkable, finding Plaintiff was in no acute distress, "alert and oriented x3," cooperative, had a grossly intact motor and sensory examination, responded appropriately, and was interactive with normal affect. (AR 834.)

In yet another effort to distance Dr. Royter's opinions from the evidence cited by the ALJ in the decision, Plaintiff asserts that the subject opinions were "not based" on any of the normal findings identified. (Doc. 12 at 13.) But those opinions do not indicate on what clinical findings they are based—they are "primarily in a checklist format" (AR 27)—and the Court declines to speculate.

While the medical record reflects that Plaintiff has physical impairments caused by seizures and pain, these have been accounted for by the ALJ. (*See* AR 28 ("The undersigned accounted for the combination of the claimant's impairments and symptoms, such as seizures and pain, with the limitations in the above residual functional capacity, which include a limitation to work at the light level with additional postural, environmental, and nonexertional mental limitations and a limitation against operating a motor vehicle.").) It was reasonable for the ALJ to conclude that the record did not further support the severity of Dr. Royter's opined restrictions regarding Plaintiff's task performance difficulty and excessive absenteeism. Thus, the ALJ's findings that Dr. Royter's opinions were inconsistent with the objective medical evidence as a whole are legally sufficient and supported by substantial evidence. *See Lewis*, 498 F.3d at 911; *Batson*, 359 F.3d at 1198.

## B.     The ALJ Properly Found Plaintiff Less Than Fully Credible

### 1.     Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not

---

[6] The Court rejects the Acting Commissioner's contention that a lesser legal standard applies. (*See* Doc. 16 at 12 n.3.)

credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2. Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Had the ALJ's statement that Plaintiff's subjective testimony was "not entirely consistent with the medical record" that was followed by a summary of the evidence been the end of the discussion, Plaintiff's contention that the ALJ "fails to state a basis for discounting Plaintiff's alleged symptoms" (Doc. 12 at 15) might have merit. However, the ALJ continued the analysis, identifying at least two valid reasons for discrediting Plaintiff's testimony.

First, the ALJ found Plaintiff's "reported activities . . . suggest[ed] that he retained functional abilities." (AR 26.) The decision cited Plaintiff's February 2021 "Adult Function Report," in which Plaintiff reported that he: has no problem with personal care, such as dressing, bathing, and feeding himself, prepares his own meals, vacuums, can count change, watches television, spends time with others in person, plays cards, and does not have any problems getting along with others. (AR 26 (citing 337–40).) While "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [their] credibility as to [their] overall disability,'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)) (alteration in original), a claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citations omitted); *see also Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Even in cases where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at

1113 (citations omitted).  As Plaintiff points out, the record also contains evidence that he needs reminders to perform certain tasks  (*See, e.g.,* AR 338.)  Yet, as noted above, the ALJ's decision properly recognized that Plaintiff has some nonexertional mental limitations.  (*See* AR 24.)  The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that his impairments render him ***completely*** unable to work, based on his reported activities indicated in the record.  *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").

Second, the ALJ found the evidence showed Plaintiff "had not been compliant with his medications," which "g[ave] rise to uncontrollable seizures."  (AR 27 (citing AR 402, 409, 641).) The record shows that in April 2020, Plaintiff reported he had not been compliant with his medications and had decreased his seizure medications.  (AR 402, 419.)  That same month, Plaintiff's recurrent seizures were "related to medication non-compliance."[7]  (AR 409.)  In December 2020, Plaintiff reported he "started missing doses of his seizure medication, which gives rise to uncontrollable seizures" (AR 641.)  In evaluating a claimant's claimed symptoms, an ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility.  *See Tommasetti*, 533 F.3d at 1039–40; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  In so doing, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  As the Ninth Circuit explained in *Fair*, it is the claimant's burden to adequately explain their failure to follow a prescribed course of treatment.  885 F.2d at 603 (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of his testimony); *see also Smolen*, 80 F.3d at 1293.  An ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Tommasetti*, 533 F.3d at 1039.

Here, Plaintiff's briefing does not address the ALJ's reliance on evidence of Plaintiff's lack

---

[7] *Cf. Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted).

of compliance with treatment as reason to discredit his subjective complaints. Plaintiff therefore proffers no explanation for his failure to follow his course of treatment by taking his seizure medication as prescribed. In view of Plaintiff not having met his burden of adequately explaining his failure to follow his treatment regimen, *see Fair*, 885 F.2d at 603, and viewing the record as a whole, the Court finds that ALJ's conclusion that Plaintiff was non-compliant with taking medication is supported by substantial evidence. The ALJ's determination that Plaintiff was non-compliant with his use of prescribed treatment is therefore another clear and convincing reason for discounting Plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039.

This case stands in contrast to *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), on which Plaintiff relies. (*See* Doc. 17 at 5. *See also* Doc. 12 at 15.) In *Brown-Hunter*, the Ninth Circuit held that it is erroneous to make a "single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying 'sufficiently specific reasons' for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (internal quotation marks and citation omitted). There, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' [courts] must have in order to review the ALJ's decision meaningfully" to "ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Unlike the ALJ in *Brown-Hunter*, who did not identify the testimony they found non-credible, *see id.*, the ALJ in this case summarized Plaintiff's testimony regarding the persistence, frequency, and limiting effects of his impairments. (AR 24–25.). The ALJ then detailed the evidence—including Plaintiff's reported activities and records showing a lack of compliance with treatment—that contradicted Plaintiff's testimony, as outlined above. (AR 26–27.) *See also Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's]

symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")).

In sum, the Court finds that the ALJ offered at least two clear and convincing reasons to discredit Plaintiff's testimony regarding the extent of his limitations. While Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see, e.g.,* Doc. 12 at 15), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 604).

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **October 18, 2024**                    /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE